**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1961
_____

ANDREW KORTYNA,
Appellant

v.

LAFAYETTE COLLEGE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 5-15-cv-04625)
District Judge: Honorable Lawrence F. Stengel, *Chief Judge*
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 23, 2018

Before: HARDIMAN, BIBAS, and ROTH, *Circuit Judges*.

(Opinion Filed: March 30, 2018)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

BIBAS, *Circuit Judge*.

Andrew Kortyna was fired from his job as a tenured physics professor at Lafayette College because he retaliated against two female students who accused him of sexually harassing them. He sued the College, alleging sex and disability discrimination, retaliation, violation of the Family and Medical Leave Act (FMLA), and breach of contract. We will affirm the District Court's dismissal because one cannot plausibly infer from the facts alleged that he was fired for any unlawful reason. Instead, as the record supports, the College fired Kortyna because it found that he had retaliated against students who complained that he had sexually harassed them.

I.

In the fall of 2013, two female students, AB and HW, filed complaints of sexual harassment against Kortyna. HW's complaint described him as "a man who 'cried,' exhibited emotion, was 'lonely,' 'strange,' 'awkward,' and 'disconnected.'" Am. Compl. ¶ 27 (quoting HW's complaint). HW wondered what she had "'done that could make a grown man cry on so many occasions.'" *Id.* ¶ 28.v (quoting HW's complaint). A series of emails that Kortyna sent to HW over the spring and summer of 2013 give color to her description, such as:

- "It must be obvious to you that I like you. One would have to be blind not to notice this [. . . .] I could easily see that you might think I'm trying to draw you into an inappropriate relationship." App. 445.

- "[Y]our way of acting of late is a really really [*sic*] crappy way of treating another person [. . .] I have obviously created an intimidating situation

2

where you are not able to be open with me. . . . I have no idea if our relationship is strong enough to withstand my words." *Id.*

- "Unless we wanted to completely turn our backs on each other, we needed to renegotiate our relationship such that prickly parts of one person didn't stick into the sensitive parts of the other person. And I think that we both have prickly and sensitive parts." *Id.*

In October 2013, Provost Wendy Hill told Kortyna of the complaints, but warned him not to discuss the case with AB. Nevertheless, the next day, he sought out AB and apologized, telling her that he was "'probably going to get fired.'" App. 475-76. Kortyna cried during his apology. Five days later, Hill reiterated: "'Let me be clear: should you see the two students[,] you should have no verbal interaction with them or interact with them in any way.'" App. 481.

As a result of the complaints, Kortyna began experiencing anxiety attacks and severe depression. So, in April 2014, he took medical leave as permitted by the FMLA. Kortyna alleged (and the College did not dispute) that those conditions were disabilities within the meaning of federal and state law. When those disabilities first arose, he complained to the College that the Committee investigating the complaints was failing to accommodate his disability by not letting a lawyer represent him during the Committee's hearings. He eventually filed suit under the Americans with Disabilities Act and the Rehabilitation Act, which the District Court dismissed. The Committee suspended its work while the College's motion to dismiss Kortyna's first lawsuit was pending.

In May 2014, while Kortyna was on medical leave, he moderated a campus lecture. Both HW and AB also attended. After the lecture ended, Kortyna was asked to

3

leave campus. In response, he stood at the front of the room and announced that he was being forced off campus.

Once Kortyna returned from his medical leave for the fall semester, the Committee resumed its hearings. After meeting dozens of times and reviewing documentary evidence, it issued detailed reports on both complaints. The Committee found that Kortyna had violated the College's policies by sexually harassing HW and retaliating against HW and AB. It focused on two incidents of retaliation against AB: first, Kortyna's apology, which the Committee viewed as a manipulative ploy to induce guilt; and second, Kortyna's conduct at the May lecture. As the Committee explained, participating in the lecture "placed [Kortyna] in a position of potentially violating two separate no-contact orders." App. 480. AB "reasonably perceived Professor Kortyna's outburst [when asked to leave campus] as retaliatory." App. 482.

The Committee also found that Kortyna's attorney had made an "intimidating statement" when he warned AB in an email not to repeat her accusations because she was "'at risk of being held responsible for doing so.'" App. 483. Moreover, though grades are confidential, Kortyna had disparaged AB's grades to one of his colleagues. Finally, a student reported that Kortyna had said that AB and HW "'would regret filing this complaint'" because Kortyna "'would come after [them] personally with a lawsuit.'" App. 490.

Ultimately, the Committee recommended suspending Kortyna for two years for sexually harassing and retaliating against HW. Although it did not find that Kortyna had

4

sexually harassed AB, it recommended firing him for retaliating against her because his pattern of retaliation was "grav[e] and persisten[t]." App. 491.

Kortyna appealed to the College's Hearing Review Committee, the College President, and the Board of Trustees. All agreed that Kortyna should be fired. At least six times in late 2014 and early 2015, Kortyna complained that he was being discriminated against because of his sex, disability, and use of medical leave. He filed the last of these complaints on March 6 and was fired on March 30, 2015.

Kortyna filed suit in the District Court, alleging violations of Titles VII and IX of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Rehabilitation Act, the Pennsylvania Human Relations Act, the FMLA, and breach of contract. The District Court dismissed each of these counts for failure to state a claim, except for FMLA interference, which was dismissed by stipulation. Kortyna appeals the dismissal of all of his claims except FMLA interference.

## II.

We review the District Court's dismissal for failure to state a claim de novo, viewing all allegations in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer

5

possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Twombly* and *Iqbal*) (internal citation omitted). We may "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss," such as the Committee's reports here, if that document is "*integral to or explicitly relied* upon in the complaint." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original). Here, Kortyna does not dispute the authenticity of the Committee's reports or the emails, statements, and historical facts described therein.

## III.

Kortyna alleges no facts that plausibly suggest that he was fired even in part because he seemed stereotypically unmasculine, was disabled, or had complained of discrimination. Nor do we perceive any plausible link between his termination and either his use of medical leave or any breach of contract.

A. *Sex Discrimination*. The Committee recommended that Kortyna be fired for retaliating against AB. Part of that retaliation was an apology in which, as Acting Provost Cohn noted, Kortyna cried. The Committee understood that his "apology" was really a retaliatory attempt to make AB feel guilty. Viewed in this context, the only reasonable inference from Cohn's statement is that he thought that Kortyna's tears were unprofessional and intimidating to a student, not that Kortyna had fallen short of a

masculine stereotype.  Kortyna does not allege that Cohn has a history of discriminating against unmasculine men or even that Cohn himself seems and acts masculine.

Nor does Kortyna allege any facts suggesting that Provost Hill's investigation was motivated even in part by discriminatory animus.  Kortyna claims that Hill relied on "the students' gender-stereotyped perception of" him.  Appellant's Br. 25.  But being "lonely," "strange," or "awkward," as HW described him, is not stereotypically unmanly.  Moreover, HW's statements that Kortyna was emotional and often cried do not suggest that Hill thought Kortyna was unmanly.  We see no hint of male stereotyping, but simply HW's reasonable appraisal of Kortyna's statements as sexual and emotional, such as: "[W]e needed to renegotiate our relationship such that *prickly parts of one person didn't stick into the sensitive parts of the other person*."  App. 445 (emphasis added).

Because we will affirm the District Court's dismissal of Kortyna's sex-discrimination claims for lack of plausibility, even on a cat's-paw theory, we do not decide whether Title IX creates a private right of action.

B.  *Disability Discrimination*.  Kortyna's amended complaint alleges no facts suggesting that he was fired because of his disability.  The District Court reached the same conclusion in dismissing his claim under the Pennsylvania Human Relations Act, which is coextensive with the Americans with Disabilities Act.  *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).  Kortyna argues that he alleged "each element of his *prima facie* case," including causation, because "he was replaced by someone outside his protected class."  Appellant's Br. 19-20.  That argument confuses *McDonnell-Douglas*'s

burden-shifting analysis (the proof required at summary judgment) with the elements of a disability-discrimination claim (the plausible allegations required at the pleading stage). *McDonnell Douglas*'s "evidentiary standard is not a proper measure of whether a complaint fails to state a claim." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). Kortyna pleads nothing that plausibly suggests he was fired even in part *because of* his disability.

    C. *Retaliation.* Likewise, Kortyna failed to allege a causal link between his complaints of sex or disability discrimination and his firing. The timing of his firing, more than three weeks after his last complaint, does not by itself support an inference of retaliation. *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (holding three weeks insufficient). And he alleges no facts showing a "pattern of antagonism" between the complaints and the firing. *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (internal quotation marks omitted), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Though the Committee was aware of Kortyna's "numerous and at times unrelenting challenges to the process and procedures," Kortyna alleges nothing further that suggests antagonism. App. 468.

    Kortyna's FMLA retaliation claim fares no better. The Committee observed that he was "taking advantage of his medical leave to try to initiate a whole new, other disciplinary process." App. 485. As the District Court noted, "[t]he fact that Dr. Kortyna was on FMLA [leave] at the time he filed these charges is noteworthy because Dr. Kortyna asked that the prosecution of the charges against the students be expedited,

despite the fact that the original charges against him could not be." App. 51. The Committee understood that he was retaliating against his accusers at the same time that his leave halted the proceedings against him.

D. *Breach of Contract*. Finally, Kortyna's amended complaint alleges no facts showing that the alleged breaches of contract caused him any harm. As the District Court held, most of the allegations of breaches of the Faculty Handbook are "bald assertions." App. 52 (internal quotation marks omitted). "Kortyna was terminated because of his retaliatory actions against AB," and the allegations that were more than conclusory asserted modest procedural irregularities that would not plausibly have affected the outcome. App. 53-54.

* * * * *

As the District Court correctly held, Kortyna did not plausibly allege discrimination, retaliation, or breach of contract. The record supports the College's decision to fire Kortyna because he had retaliated against his students after they complained that he had sexually harassed them. Any college would have done the same to protect its students. We will thus affirm the District Court's dismissal of Kortyna's claims.

9